IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ELTON R. BARNETT, ADMINISTRATOR | ) | |
|---|---|---|
| OF THE ESTATE OF WILLIS R. | ) | |
| BARNETT, DECEASED, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-cv-844 |
| | ) | |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Cathy Bissoon |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendant United States of America's Motion for Summary Judgment (Doc. 12) be granted in part and denied in part, as discussed below.

### II. REPORT

**BACKGROUND**

This is an action brought by the Estate of Willis R. Barnett ("Plaintiff") for a tax refund for the alleged overpayment of estate taxes. Willis R. Barnett ("Decedent") died on October 13, 2003. (Local Rule 56.1 Stmt. in Supp. of the United States' Mot. for Summ. Judg. (Doc. 12) ("Def's Facts") at ¶ 1.) Elton R. Barnett, as Administrator of the Estate of Willis R. Barnett, filed an estate tax return for Willis R. Barnett's estate. Id. at ¶ 2. In that return, Plaintiff reported a Total Gross Estate of $1,341,457.00 and a Taxable Estate of $1,235,324.16. Id.; see also Federal Estate Tax Return, attached as Ex. A to Pl's Compl. ("Estate Tax Return"). Based on these values, Plaintiff paid a total of $72,752.00 in estate taxes. See generally Estate Tax Return. The Internal Revenue Service ("IRS" or "Defendant") reviewed the Tax Return and made

several adjustments to it, which resulted in a tax increase of $245,000 plus $36,267 in interest. Id. at ¶ 3. Specifically, the IRS increased the Taxable Estate by $268,042.00 and added $340,000 back into the estate as an Adjusted Taxable Gift. Id. at ¶ 4. Although the IRS made other adjustments, at issue are the additional payments it made as a result of adjustments relative to two categories of transfers: (1) gift checks and (2) a September 2001 check to Elton Barnett treated by the Estate as a loan repayment.

**The Gift Checks**

Between July 31, 2003 and October 13, 2003, Elton Barnett, as Power of Attorney, issued a series of seventeen (17) checks, noting in the "Memo" section of each check that it was a gift. (Doc. 12, Def's Exs. 132, 134, 136, 137; Def's Facts at ¶¶ 7, 9.) Five (5) of these checks were dated and cashed by the recipient prior to Decedent's death on October 13, 2003. (Def's Exs. 134, 136, 139.) Specifically, Elton Barnett issued four (4) checks dated July 31, 2003, each in the amount of $11,000.00. (Def's Ex. 136.) Each of these checks was cashed between August 11, 2003 and August 22, 2003. Id. Elton Barnett also issued one (1) check dated October 10, 2003, which was cashed also on October 10, 2003. (Def's Ex. 134, 139.) Each of the remaining twelve (12) checks was issued by Elton Barnett as Power of Attorney in the amount of $11,000.00 and dated October 10, 2003. (Def's Exs. 132, 137.) Each of these twelve checks was cashed sometime after Decedent's death on October 13, 2003. Id. Elton Barnett executed each of the alleged gift checks on behalf of the Decedent as Power of Attorney for Decedent. Id. at ¶ 6. The Power of Attorney, however, indisputably did not contain an authorization to make gifts. Id. at ¶ 6.

**The Loan**

Between December 1988 and December 1997, Elton Barnett advanced money to the Decedent totaling $312,490.00. Id. at ¶ 12. On December 21, 2000, Decedent received an advance distribution from his wife's estate in the amount of $303,000. Id. at ¶ 19. On January 9, 2001, Decedent incorporated Barnett Garage as Barnett Auto Sales & Service, Inc. ("BASS"). Id. at ¶ 20. In exchange for assets of Barnett Garage, Decedent received 300,000 shares in BASS, each with a $1.00 par value. Id. On January 24, 2001, Decedent signed a check drawn on his personal bank account to pay $305,000 into Barnett Garage's bank account. Id. at ¶ 21. On January 26, 2001, Decedent signed a check drawn on Barnett Garage's bank account to pay $350,000 to Elton Barnett. Id. at ¶ 22. On January 29, 2001, Elton Barnett paid $300,000 to BASS and, in return, received 300,000 shares in BASS. Id. at ¶ 23.

**ANALYSIS**

As noted above, at issue in this action are two groups of transfers, specifically: (i) the series of $11,000 gift checks executed and delivered by Elton Barnett on behalf of the Decedent as his Power of Attorney and (ii) the January 26, 2001 check in the amount of $350,000 from Decedent to Elton Barnett. Defendant disagreed with the manner in which Plaintiff characterized these transfers and, based on its adjustments, increased the Estate's tax liability. After paying the additional taxes due, Plaintiff filed the instant action for a tax refund. The IRS now moves for summary judgment, arguing that there are no genuine issues of material fact as to Plaintiff's claim for a tax refund.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. **The Gift Checks**

Elton Barnett issued each of the seventeen gift checks at issue on behalf of the Decedent as Decedent's Power of Attorney. Defendant contends that the checks were not gifts because the Power of Attorney did not authorize Mr. Barnett to make gifts. (Mem. of Law in Support of Def's Mot. for Summ. Judg. (Doc. 12) ("Def's Br.") at 5-6.) As such, Defendant argues, none of the checks effected a transfer out of the estate and the monies from those checks (namely, $55,000.00 and $93,227.00) should be included in the Decedent's gross estate. Id. Although Plaintiff admits that the Power of Attorney did not contain an authorization to make gifts, he contends that Mr. Barnett nevertheless could issue the gift checks because Mr. Barnett and the Decedent had "discussed the making of gifts and [Decedent] agreed to do so." (Mem. of Law in Opp. to Def's Mot. for Summ. Judg. (Doc. 13) ("Pl's Opp.") at 1.) Plaintiff asserts that a "material issue of fact exists regarding whether the decedent ratified his son's execution and distribution of the gift checks in question." Id. at 5. The Court disagrees with Plaintiff on this score.

The parties do not dispute that Pennsylvania state law governs this issue. Under Pennsylvania law, generally, "[a] principal may empower an agent to make a gift in a power of attorney **only as provided in this section**." 20 Pa. C.S.A. § 5601.2(a) (emphasis added). The statute governing gift rules in a power of attorney more specifically provides:

> (b) Limited gifts. – A principal may authorize an agent to make a limited gift . . . by the inclusion of:
>
> (1) the language quoted in section 5602(a)(1) (relating to form of power of attorney); or

> (2) other language showing a similar intent on the part of the principal to empower the agent to make a limited gift.
>
> (c) Unlimited gifts. – A principal may authorize an agent to make any other gift only by specifically providing for and defining the agent's authority in the power of attorney.

20 Pa. C.S.A. § 5601.2(b)-(c).

A review of the comments to the statute reveals that the clear intent of these subsections is to overrule a 1992 Pennsylvania Supreme Court decision[1] that "would permit an agent to make a gift under a power of attorney which does not specifically provide for that power." Id., Jt. St. Govt. Comm. Comment – 1999. In short, the purpose of the statute is "to provide that when the principal intends to authorize the agent to make a gift under the power of attorney, that authorization is specifically stated in the power of attorney." Id.; see also In re Estate of Slomski, 956 A.2d 438, 444 (Pa. Super. Ct. 2008) (citing and discussing legislative comments).

The Pennsylvania Superior Court has construed the statute narrowly. See Metcalf v. Pesock, 885 A.2d 539 (Pa. Super. Ct. 2005). In Metcalf, the plaintiff, as in the case at bar, conceded that the power of attorney did not empower the agent to make a gift. Id. at 541. Despite this concession, however, plaintiff argued that more general language in the power of attorney allowing the agent to "otherwise dispose of" the decedent's interests in real property was sufficient under the statute to instill in the agent the power to make limited gifts. Id. The court rejected plaintiff's argument and affirmed the trial court, finding that the trial court did not err in determining that the plaintiff "was not empowered to make a gift where the **power of attorney did not specifically delineate the statutorily required intent** on the part of the decedent." Id. (emphasis added). See also In re Estate of Slomski, 956 A.2d at 442-44 (holding that the generalized language in a power of attorney permitting an agent "to make a gift" was

---

[1] The decision specifically overruled by the Pennsylvania Legislature is Estate of Reifsneider, 610 A.2d 958 (Pa. 1992).

insufficient under the statute to vest the agent with the authority to make unlimited gifts under a power of attorney).

It is undisputed – and indeed, Plaintiff expressly admits – that the Power of Attorney did not contain any language vesting Elton Barnett with the authority to make gifts. See Def's Ex. 133; Def's Facts at ¶ 6 ("The power of attorney under which each of the checks at issue was signed by plaintiff Elton Barnett as power of attorney for decedent Willis Barnett did not contain authorization to make gifts.") and Pl's Response to Def's Facts (Doc. 13) at ¶ 6 ("Admitted"); see also Pl's Opp. at 1 ("The decedent, Willis Barnett, executed a power of attorney in favor of his son, Elton Barnett, although the power of attorney failed to include any provisions authorizing gifting."). Given this admission, the Court finds that there is no issue of material fact as to whether Elton Barnett had the power to make a gift and summary judgment in favor of Defendant is appropriate. Although Plaintiff's admission is dispositive of the issue, the Court will address Plaintiff's argument that Elton Barnett nevertheless had the power to execute gift checks on behalf of the Decedent.

Despite his admission that the Power of Attorney did not contain the requisite language, Plaintiff argues that the Power of Attorney was modified to allow him to execute and distribute the checks. In support of this argument, Plaintiff cites to Colarossi v. Faber, 518 A.2d 1224 (Pa. Super. 1986) and relies on the general agency principle that "'[a] principal may ratify an act of an agent, or may modify the original agency relationship, by acquiescing to the new exercise of authority.'" (Pl's Opp. at 4.) Plaintiff's argument is unpersuasive.

The Court initially notes that Colarossi was decided over 10 years before the statute governing gifting authority in a power of attorney came into existence. Moreover, Colarossi did not address the issue of whether a power of attorney authorized the agent to make gifts on behalf

of the principal or whether the principal ratified an agent's conduct in making such gifts. Instead, at issue before the Pennsylvania Superior Court was a dispute over leasehold property and whether a power of attorney gave the agent the power to grant a right of first refusal in a lease and/or whether the principal ratified the agent's conduct in granting such a right. Colarossi, 518 A.2d at 1227-29. Given the factual dissimilarities, along with the fact that the Pennsylvania legislature has since passed a statute governing gift making authority in powers of attorney, Colarossi is inapposite.

Indeed, Plaintiff's ratification theory is unconvincing given the stated purpose behind Section 5601.2, which is to address the proper manner in which a principal may authorize an agent to make a gift under a power of attorney. See 20 Pa. C.S.A. § 5601.2, Comment. The statute clearly provides that the power of an agent to make a gift as a power of attorney – which is the purported authority Elton Barnett invoked here – can only occur "as provided in this section [e.g., Section 5601.2]." Id. at § 5601.2(a). Plaintiff's argument fundamentally ignores the principle that "'powers of attorney are to be strictly construed.'" In re Estate of Slomski, 956 A.2d at 444 (quoting In re Estate of Cambest, 756 F.2d 45, 52 (Pa. Super. Ct. 2000)). Indeed, Plaintiff's argument – if accepted – would render Section 5601.2 meaningless and ineffective. Id. at 442-44 (noting various rules of construction under Pennsylvania law establishing that legislative intent controls and holding, based on these rules and the language of Section 5601.2, that the language "to make a gift" was insufficient to vest an agent with the authority to make unlimited gifts under a power of attorney) (citing 1 Pa. C.S.A. §§ 1921(a), 1922(2), 1932(b)). As the Pennsylvania Superior Court has noted, "[i]f an agent were to avoid application of section 5601.2 by merely pointing to general residuary provisions in a POA, section 5601.2 would be

ineffective in the very situations it was promulgated to address – namely, situations where an agent points to general authority in a POA to justify gifting the decedent's property." Id.

The Court observes that far from pointing to a general residuary provision **within** the power of attorney as in Estate of Slomski (e.g., language providing authority "to make a gift"), Plaintiff in the case at bar seeks to rely on evidence **outside** of the power of attorney (e.g., alleged discussions with the Decedent about the gift checks) to justify his conduct in executing the gift checks. Yet, Plaintiff has not cited to any authority supporting the notion that this is appropriate in light of the statutory language and legislative intent. In fact, the Court of Federal Claims, albeit in the context of a California statute governing powers of attorney, has rejected the very argument Plaintiff seeks to advance here. Estate of Swanson v. U.S., 46 Fed. Cl. 388, 390-93 (Fed. Cl. 2000) (finding a series of 38 gift checks void because the power of attorney did not provide for gifting authority and rejecting argument that decedent's "nodding at the names of the donees constituted a ratification" because the power of attorney could be altered only by another writing insofar as California's statute, like Pennsylvania's statute, expressly provided that gifting authority had to be provided for in a power of attorney), aff'd, 10 Fed. Appx. 833 (Fed. Cir. Mar. 25, 2001).

In sum, there is no dispute that Elton Barnett – not Decedent himself – executed each one of the seventeen (17) gift checks. It is also undisputed that Mr. Barnett executed each of those gift checks **on behalf of** the Decedent as his Power of Attorney. Under this Power of Attorney, however, Mr. Barnett indisputably lacked the power to make such gifts. Each of the gift checks, therefore, failed to constitute a valid gift for estate tax purposes. The Court, accordingly,

recommends that Defendant's Motion for Summary Judgment be granted as to the adjustments made in connection with the seventeen gift checks.[2]

### B. The Loan

The second transfer at issue is a $350,000 payment dated January 2001 from Barnett Garage (via a check executed by Decedent) to Elton Barnett. (Def's Facts at ¶ 22; see also Def's Ex. 107.) The Estate treated this payment for purposes of the Tax Return as a repayment by Barnett Garage of a loan. The IRS, however, treated this payment as a gift and adjusted the Tax Return by adding $340,000.00 for "Adjusted taxable gifts." Plaintiff argues that an issue of fact exists as to whether the payment constitutes a loan repayment or a gift. The Court agrees.

The parties agree that intra-family transfers are presumed to be gratuitous and, therefore, are viewed with rigid and heightened scrutiny. Estate of Musgrove v. U.S., 33 Fed. Cl. 657, 661 (Fed. Ct. Cl. 1995). This presumption, however, is rebuttable. Id. at 662. To establish that the transaction was not gratuitous and that it instead was a *bona fide* loan, a party must establish that, at the time the purported loan was made, the parties intended to create an obligation to repay the loan. Id.; see also Estate of Ribblesdale v. Comm'r, T.C. Memo. 1964-177, 23 T.C.M. (CCH) 1041 (1964) ("The bona fides of a loan are primarily established by the intention of the parties that repayment will be made pursuant to the terms of the agreement.") The requisite intent is to be assessed based on the all of the facts and circumstances, including such factors as the following: (1) the existence of a promissory note; (2) the charging of interest; (3) security or collateral; (4) a fixed maturity date; (5) a demand for payment; (6) actual repayment; (7) transferee's ability to pay; (8) records reflecting the transfer as a loan; and (9) the manner in

---

[2] Because the Court finds the issue of whether the Power of Attorney permitted Elton Barnett to make gifts under Pennsylvania law dispositive, the Court does not reach Defendant's alternative argument relative to the timing of certain of the checks (e.g., 12 of the 17 checks) written on October 10, 2003, but cashed after the Decedent's death.

which the parties reported the transfer on their tax returns. <u>Miller v. Comm'r of Internal Revenue Svc.</u>, T.C. Memo. 1996-3, 71 T.C.M. (CCH) 1674 (1996) (citing cases), <u>aff'd</u>, 113 F.3d 1241 (9th Cir. 1997). None of the above factors, however, is determinative. <u>Id.</u>

Defendant asserts that there is no evidence of the requisite intent to create a repayment obligation. It also argues that the surrounding facts demonstrate a circular transfer of money, noting, among other things, that the monies that Elton Barnett loaned Decedent came from funds he and his wife had received as gifts from the Decedent. (Def's Br. at 9-10.) Defendant's observations, although notable, do not demonstrate that there is no genuine issue of material fact on the issue of whether a valid loan transaction existed.

To begin, the Court notes that the funds purportedly loaned from Elton Barnett to Barnett Garage were made on various dates between December 31, 1988 and December 31, 1997. (Pl's Ex. 202, Affidavit of Mark J. Guiler (Doc. 13) ("Guiler Aff.") at ¶ 3; Def's Ex. 104.) The principal amount of the purported loan was $312,490.00. (Guiler Aff. at ¶ 3.) Plaintiff has proffered evidence that the loan appeared on the books of Decedent's corporation as a "note payable." (Def's Ex. 202, Deposition of Mark J. Guiler (Doc. 12) ("Guiler Dep.") at 26; Guiler Aff. at ¶ 3.) In this regard, Decedent's accountant, Mark J. Guiler, testified that he would examine the checks written and the deposits made, confer with Decedent about these transactions and treat certain of these transactions as a loan from Elton Barnett to Barnett Garage. (Guiler Dep. at 25-26.) Mr. Guiler also testified that he created an amortization schedule in 1997[3] to reflect the interest on the purported loan between Elton Barnett and Barnett Garage. <u>Id.</u> at 26. Further, Mr. Guiler testified that he understood the interest rate on the loan to be 7%, which is

---

[3] The Court notes that the amortization schedule was created well before the September 2001 payment that Plaintiff maintains was a loan repayment and that the IRS contends was a gratuitous payment to Elton Barnett. Construing the evidence in favor of the non-moving party, a jury could infer that the parties intended that the money paid from Elton Barnett to Barnett Garage was, indeed, a loan.

- 10 -

the rate he utilized on the amortization schedule.  Id. at 48.  Finally, Mr. Guiler testified that he first learned of the loan in approximately 1990 when he began to take care of Decedent's books and saw that the financial statements included a "notes payable line."  Id. at 24.

In addition to Mr. Guiler's testimony and affidavit, Elton Barnett – the alleged lender – testified that he provided the money to Decedent's business with the intention that the business would repay him at some point in the future.  (Def's Ex. 200, Deposition of Elton Barnett (Doc. 12) ("Barnett Dep.") at 78.)  Although Mr. Barnett acknowledged that the loan has not been repaid in its entirety, he testified that he has an expectation that the full principal of the loan will be repaid.  Id.  Finally, the Court finds it noteworthy that both Elton Barnett and his wife, Meryl, testified that a purpose behind the purported loan was to create a way to reduce the floor plan financing that Decedent had taken to help finance Barnett Garage.  (Id. at 91-92, 97-98; see also Def's Ex. 203, Deposition of Meryl Barnett (Doc. 12) at 13-14.)  Mr. Barnett's testimony that he expects that the loan will be repaid in full, coupled with the purpose underlying the loan, may allow for an inference that the parties intended to create a repayment obligation.

Despite the above evidence, Defendant argues that Barnett Garage did not have an unconditional duty to repay insofar as none of the following indicia of a loan existed:  a note, a maturity date, a payment schedule, security, or a demand for payment.  (Def's Br. at 10; Reply Mem. of Law in Supp. of Mot. for Summ. Judg. (Doc. 14) ("Def's Reply") at 10.)  But, as one court has noted:

> [Courts] do not negate bona fides simply because a family member was willing to make concessions to his family member which he would not have made to a stranger.  The cases do not require that the loan, in order to be 'bona fide,' bear interest, be evidenced by documentation in the form of a note or otherwise, or require that the loan be the result of arm's-length bargaining.  The key factor is, as the [c]ourt analyzes these cases, intent that the loan be, at some time, repaid.

Estate of Elkins v. U.S., 457 F. Supp. 870, 874 (S.D. Tex. 1978) (analyzing and discussing decisions addressing the issue of whether an intra-family loan is *bona fide*). In Estate of Elkins, the court addressed the precise issue in the case at bar – namely, whether sums paid by the sons to their father constituted a *bona fide* loan. Id. at 872. The court concluded that they did based on evidence of intent, including – as in the case at bar – the manner in which the amounts were recorded on the father's books (e.g., as accounts payable) and the direct testimony of the sons and the father's tax consultant. Id. at 874-75. See also Jones v. U.S., 424 F. Supp. 236, 237-38 (E.D. Ill. 1976) (finding, in an action for refund, that money that decedent's wife advanced to him over a period of twelve years was in the nature of a loan, and not a gift, despite the fact that no note evidencing the debt existed nor was interest charged because the evidence showed that decedent "kept records of the advances and [his] repayments in a book of accounts payable"); Estate of Ribblesdale, T.C. Memo. 1964-177, 23 T.C.M. (CCH) 1041 (finding that the advances at issue were in the nature of loan because the "advances were made by [son] with the expectation that he would be repaid by decedent, either during her lifetime or from her estate").

Given the standards for obtaining summary judgment, the evidence proffered by Plaintiff, viewed in the light most favorable to Plaintiff, is sufficient to raise a genuine issue of material fact as to whether Elton Barnett advanced money to Decedent's business as a loan and whether Mr. Barnett and Decedent had the intention to create an obligation to repay such monies. Although the evidence is not overwhelming, the Court is not convinced that no reasonable juror could find in Plaintiff's favor. Accordingly, the Court recommends that Defendant's Motion for Summary Judgment be denied as to the $350,000.00 payment purported to be a *bona fide* loan, but characterized by Defendant as a gift.

## **CONCLUSION**

For all of the reasons stated above, Defendant United States of America's Motion for Summary Judgment (Doc. 12) should be granted in part and denied in part. Specifically, the Court recommends that Defendant's Motion be granted as to the adjustments Defendant made in connection with the seventeen gift checks and Plaintiff's subsequent claim for a tax refund relative to those gift checks. The Court recommends that Defendant's Motion be denied in all other respects.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by June 15, 2009. Responses to objections are due by June 29, 2009.

s/ Cathy Bissoon<br>
Cathy Bissoon<br>
U.S. Magistrate Judge

May 27, 2009

cc (via email):

Henry M. Ekker, Esq.
Wade M. Fisher, Esq.
Albert W. Schollaert, Esq.
Daniel J. Healy, Esq.
Greogry C. Melucci, Esq.